UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
AALIYAH JONES,

                                  Plaintiff,

           -against-

BLURESCA, LLC,

                                  Defendant.
------------------------------------------------------------------X

Docket No.: 1:23-cv-10758

**AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, AALIYAH JONES ("Ms. Jones" or "Plaintiff"), by her attorney, Joseph & Norinsberg, LLC, complaining of the Defendant, BLURESCA, LLC. ("Defendant" or "Bluresca") (collectively, "the Parties"), respectfully alleges as follows:

### PRELIMINARY STATEMENT

1. This action arises from Defendant's willful and flagrant violation of its contractual obligations with Plaintiff. In a classic "bait-and-switch" scheme, Defendant lured Plaintiff to join their marketing agency with the false promise that they would actively promote her on OnlyFans ("OF"), knowing full-well that they had no intention of doing so. Instead, after an initial show of marketing efforts, Defendant drastically reduced its promotion leading Ms. Jones having to secure subscribers primarily through her efforts, which substantially reduced her earnings potential.

2. Worse still, Defendant made a catastrophic mistake when handling Ms. Jones' OF account. In September 2023, Bluresca erroneously informed OF that Ms. Jones was (17) seventeen years of age and therefore a minor when she recorded one of the videos that had been posted to her OF account. This claim was patently false. At all times, Ms. Jones was an adult when she created her videos for OF.

1

3.      As a result of Defendant's egregious mistake, Ms. Jones has been permanently banned from OnlyFans, and her career and earning potential has been irreparably damaged. Plaintiff now seeks compensation for the substantial financial losses she has suffered, and will continue to suffer, as a result of Defendant's breach of contract and gross negligence.

## JURISDICTION

4.      Jurisdiction is founded upon 28 U.S.C. § 1332, as diversity exists between the parties.

5.      Plaintiff is a citizen of the State of California.

6.      Defendant is a limited liability company, and a citizen of the State of Delaware, with its principal place of business located at 1201 North Orange Street, Unit 762, Wilmington Delaware, 19801.

7.      Nicholas Almonte is the owner of Bluresca, LLC and is a member of Defendant's limited liability company. Mr. Almonte is a citizen of the State New York, and resides at 199 Washington Avenue, Albany, NY 12210.

8.      Jurisdiction is also proper as the Parties consented to personal jurisdiction in the State of New York, as per their Marketing Agreement ("the Agreement"):

> All legal actions relating to this Agreement shall be brought in the state or federal courts located in the State of New York. Each party knowingly and voluntarily waives any objection to the venue of any such action, suit, or proceeding." Exhibit A, ¶ XIX, "Governing Law".

## VENUE

9.      Venue is properly laid in the Southern District of New York under 28 U.S.C. § 1391(b), in that the parties have agreed to this venue by contract, as stated above.

**JURY DEMAND**

10.     Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

**PARTIES**

11.     Plaintiff AALIYAH JONES is a female and was at all relevant times a resident of the State of California and a party to the Marketing Agreement, attached hereto as "Exhibit A."

12.     Defendant, BLURESCA is an online marketing agency that promotes itself as "a full-service OnlyFans management and digital marketing agency," and a party to the Marketing Agreement, attached hereto as "Exhibit A."

**FACTS**

13.     During the fall of 2022, Defendant recruited Ms. Jones shortly after viewing her posts on Instagram.

14.     At the time, Ms. Jones had just started using the platform to earn an income.

15.     Plaintiff's plan had been to start college at the University of California, Irvine, but she was unable to enroll or obtain housing due to her financial limitations and lack of parental support.

16.     After viewing Ms. Jones' Instagram posts, and seeing her potential, a Bluresca agent, who introduced himself as "Ralph," enticed her to sign a marketing agreement that would, among other things, allow Defendant to collect 60% of her earnings on media platforms, such as "OnlyFans" ("OF"), where Defendant would post content that she created.

17.     On or about September 13, 2022, the Parties entered into a 24-month term Marketing Agreement, in which provides, inter alia, that:

a. Plaintiff would be issued accounts on Instagram, OnlyFans, Twitter and TikTok, "Subscription Sites," which were owned by Defendant. See Exhibit A, Preamble.

b. Defendant would be the exclusive Subscription Sites profile manager and Plaintiff would not be permitted to enter into any other agreement with any third party in connection with the Subscription Sites. Id., ¶ XXI.

c. Defendant would provide Plaintiff with an OnlyFans Page, Instagram Page growth and implementation of Defendant's Subscription Sites Strategy. Id., ¶ XXI.

d. Defendant agreed to grow Plaintiff's Instagram page See Exhibit A, at ¶ II.

e. Defendant will pay to "give a shout out" to Plaintiff, in order to grow her followers. Id., ¶ II.

f. Plaintiff will be entitled to 40% of the net profits gained from such sites, defined as the total amount of profits collected after the deduction of the Subscription Site's fees. Id., ¶ III.

18. To induce her to sign, Defendant falsely claimed that it would invest a considerable amount of money into promoting Ms. Jones to elevate her visibility and increase her number of subscribers, throughout the term of her contract.

19. In the beginning of the arrangement, Defendant devoted financial resources into promoting Ms. Jones, as they were required to do under the Agreement.

20. However, after Defendant's initial push to increase Ms. Jones's subscribers, Defendant's financial investment drastically decreased, making it clear that Bluresca's initial marketing efforts were merely for show, and that in fact, Defendant had no intention whatsoever of honoring its marketing obligations under the Agreement.

21. When Ms. Jones noticed that the marketing and promotional resources that Defendant had initially invested in her were almost non-existent, she began asking about what efforts and resources the company was devoting to specifically promote her.

22. In response, Defendant's agents refused to answer her questions, choosing instead to engage in deflection and misdirection.

23. Nonetheless, Ms. Jones continued to press Bluresca to provide the truth as to what promotional efforts, if any, they were actually making on her behalf. Instead of providing the truth, however, Defendant continued to try to conceal information from her and deceive her.

24. Finally, after realizing that Plaintiff would not be cowed into silence, one of Defendant's managers, "Lenny," admitted that Bluresca could not show that it had spent *any* financial resources specifically for Plaintiff, claiming that "We don't have expenditure tracked on a per model basis, unfortunately, because we buy ads in bulk…"

25. Despite Defendant's flagrant violation of its contractual obligations, Ms. Jones was still able to grow her subscribers from approximately 100 to approximately 33,000 because of her exceptional work ethic. This number would have been markedly higher had Defendant honored its obligations under the contract and invested consistently in Plaintiff.

26. Notwithstanding Defendant's violation of the Agreement, Ms. Jones abided by all the terms of the Agreement and routinely "uploaded content to the company" and "communicated effectively with [Defendant's] team in a timely manner."

27. In fact, Ms. Jones went above and beyond her obligations under the contract, working a large number of hours every week in order to maximize the success of her OF profile. As her manager William admitted to her, "You're working the hardest at the company r[right] n[ow] (don't tell anyone I said that…)". On another occasion, Willliam stated "Your biggest asset is your work ethic… You're willing to put yourself out there and so many people are stuck at below 10K because they are scared..."

28.    Bluresca earned substantial profits because of Ms. Jones's exceptional work efforts. In fact, in one year alone, Defendant collected nearly **$600,000.00** in fees from Ms. Jones.

29.    Prior to entering into the Agreement, Plaintiff accurately represented that she was over 18 (eighteen) years of age at the time, which was the minimum age that was required in order for Plaintiff to legally post the mature content for which the Agreement called.

30.    In fact, upon Defendant's request, in or around December 2022, Plaintiff provided a true and accurate color-copy photograph of her California driver's license, reflecting that she was 20 years of age.

31.    On or about September 19, 2023, Ms. Jones tried to access her OnlyFans ("OF") page and saw that it had been blocked. When she contacted a representative at OF to find out why she could not access her page, the representative informed her that she had violated the terms of use agreement.

32.    Ms. Jones, completely unaware of what violation had been committed, immediately appealed the ban, but this appeal was denied.

33.    Further, immediately after learning of the ban, Ms. Jones contacted Defendant to find out if anyone at the company knew anything about this alleged violation, which had caused OF to permanently ban her from the platform.

34.    During this time Ms. Jones primarily communicated with "Almonte" and "Lenny."

35.    These communications reveal that Defendant knew exactly why OF had banned her from the platform, and also, that Defendant knew the Company was responsible for this catastrophic mistake.

36.    Turning first to her communications with Almonte. In response to Ms. Jones expressing her frustrations and confusion after learning of the ban, Almonte responded:

> "*Mentioning anything in messages or video of being underage is usually an immediate ban*, we had a situation like this in the past where one of our clients got her backup banned and nearly her main banned as well because of a mass message that was sent out, let me make a few calls, see what I can do, but honestly don't get your hopes up, OnlyFans does not take this lightly at all[.]"

37. Shortly after the above exchange, Almonte sent Plaintiff a screenshot of a text exchange that he had had with an OF executive, confirming that the ban would not be lifted:

> "Just got off the phone with an executive at OF, he said it was *removed for underage violations*, wasn't able to really give me any more info after that, they take this stuff extremely Seriously ://"

38. As the above quoted texts prove, one of Defendant's owners and CEO, Almonte knew that Ms. Jones's OF account had been banned because of a false post that she was underage when one of her videos had been posted.

39. Further, Almonte admitted in the above text that he would be making calls to OF's representatives to find out exactly what happened.

40. Upon information and belief, Almonte ascertained the exact post that caused the ban.

41. Yet when probed by Ms. Jones, Almonte deliberately provided false and misleading responses.

42. Almonte knew the content which triggered the permanent ban had been created from Ms. Jones's second OF account in May of 2023, when Bluresca was *solely responsible* for the content of Plaintiff's account.

43. Indeed, Defendant had requested and assumed exclusive control over Ms. Jones second OF account since March of 2023.

7

44. Despite Almonte's evasiveness, when Ms. Jones confronted Lenny with the fact that the false post about her being age 17 occurred when Bluresca had exclusive control over the account, he admitted that Defendant was, in fact, to blame for erroneously telling OF that Ms. Jones was underage, as confirmed in a text exchange between Plaintiff and Lenny.

45. In this text exchange, Ms. Jones accused Bluresca of "sen[ding] the underage message," to which Lenny responded, "we told them that already." The full text exchange was as follows:

> "Okay, you guys need to call Onlyfans again and tell them that *y'all sent the underage message*, because it's unfair to me that [I] get blacklisted and can't create an account on Onlyfans, when I am of age and have done nothing to violate the terms."
>
> "*We told them that already*, im [sic] not sure if it's going to be permanent, in the second account, were you able to take a screenshot or do you have anything saying when that was sent? We need to give them as much information as possible[.]"

46. Thus, despite providing Defendant with clear proof of her legal age, Defendant negligently misrepresented to OF, and possible other Subscription Sites, that Ms. Jones was under the age of 18 at the time she recorded a video which Defendant had uploaded to OF and other Subscription Sites.

47. Alternately, Defendant knowingly misrepresented to at least one Subscription Site that she was under the age of 18 at the time she recorded a video which Defendant had uploaded to the Subscription Sites.

48. Indeed, Defendant's actions caused Plaintiff to be permanently banned from the OF Subscription Sites, resulting in the complete termination of her OF account.

49. This egregious act not only tarnished Plaintiff's professional image but has also had severe financial implications, causing her to suffer drastic financial losses that will only get worse over time.

### FIRST CLAIM FOR
### RELIEF UNDER N.Y. STATE LAW: BREACH OF CONTRACT

50. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "49" as if the same were more fully set forth at length herein.

51. Plaintiff and Defendant entered into a valid contract, whereby Defendant agreed to providing Plaintiff with an exclusive OnlyFans Page, Instagram Page growth, along with implementation of their "Subscription Sites Strategy," in order to grow Plaintiff's following.

52. In New York, all contracts imply a covenant of good faith and fair dealing in the course of performance, including the contract at issue in this matter.

53. This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

54. In the present case, Defendant's acts in misrepresenting Plaintiff's age, or causing this misrepresentation to be made, which cause Plaintiff damage.

### SECOND CLAIM FOR
### RELIEF UNDER N.Y. STATE LAW: DEFAMATION

55. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "54" as if the same were more fully set forth at length herein.

56. Defendant provided false and misleading information to various third parties, including OnlyFans regarding plaintiff AALIYAH JONES.

57. Defendant knew, or in the exercise of reasonable care, should have known, that the information they were providing to these third parties—that Plaintiff was underage and committing a crime at the time she performed in her videos— was false and misleading.

58. Such a statement is defamatory *per se*, in that it is a statement charging plaintiff AALIYAH JONES with a serious crime and/or it directly injures Plaintiff's profession.

59. Defendant acted with malice in making false and misleading statements about plaintiff AALIYAH JONES.

60. Defendant acted with a reckless disregard for the truth in making false and misleading statements about plaintiff AALIYAH JONES.

61. Defendant made such statements without privilege or authorization from plaintiff AALIYAH JONES.

62. As a result of Defendant's false statements, plaintiff AALIYAH JONES was prohibited from maintaining an OnlyFans account, and other social media accounts.

63. Indeed, the allegation itself that Plaintiff was under legal age when she maintained and uploaded content onto OnlyFans is injurious to Plaintiff's profession.

## THIRD CLAIM FOR
## RELIEF UNDER N.Y. STATE LAW: NEGLIGENCE

64. Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "63" as if the same were more fully set forth at length herein.

65. Defendant issued, controlled and had unfettered access to Plaintiff's OnlyFans and other Subscription Sites.

66. Defendant and had a duty of care to provide accurate information and content regarding Plaintiff.

67. Defendant breached that duty by causing false and misleading information regarding Plaintiff's underage status to be uploaded to OnlyFans and other Subscription Sites.

68. Defendant's conduct was the proximate cause of Plaintiff's injuries.

69. As a result of Defendant's conduct, Plaintiff suffered substantial financial damages and irreparable harm to her career.

**WHEREFORE**, plaintiff AALIYAH JONES demands judgment in the sum of five million dollars ($5,000,000.00) in compensatory damages, ten million dollars ($10,000,000.00) in punitive damages, plus attorney's fees, costs, and disbursements of this action.

Dated: New York, New York
December 11, 2023

BY: _____
JON L. NORINSBERG, ESQ.
Joseph & Norinsberg, LLC
*Attorney for Plaintiff*
110 East 59th Street, Suite 2300
New York, New York 10022
(212) 791-5396