ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/21/24

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

AALIYAH JONES,

                                        Plaintiff,

                    - against -

BLURESCA, LLC,

                                        Defendant.

---

23 Civ. 10758 (LLS)

OPINION & ORDER

In 2022, plaintiff Aaliyah Jones entered into an agreement
with defendant Bluresca, LLC ("Bluresca"), under which Jones
agreed to provide Bluresca with content to be posted on various
social media accounts, including on the platform OnlyFans,
registered under her name. In return, Bluresca agreed to promote
those social media accounts to increase the number of people
following them ("followers"), which increased the money Jones
earned from those accounts. Because some of the content Jones was
providing was "mature" in nature, she was required to be over the
age of eighteen to post on some of those social media accounts.
However, when a post on OnlyFans falsely indicated that Jones was
underage, she was permanently banned from the site. That ban
resulted in financial harm to Jones, who alleges that Bluresca not
only falsely represented that she was underage but also failed to
invest the appropriate monetary resources to promote her accounts.
She now claims breach of contract, defamation, and negligence

1

against Bluresca, which moved to dismiss the Amended Complaint
under Federal Rule of Civil Procedure 12(b)(6). For the following
reason, the Motion to Dismiss is denied in part, and granted in
part.

## Facts

During the fall of 2022, Jones began using Instagram to earn
an income. Amended Complaint (the "Am. Comp.") (Dkt. No. 5) at ¶¶
11, 14. After viewing Jones's Instagram posts, an agent of
Bluresca allegedly "enticed her to sign a marketing agreement that
would, among other things, allow Defendant to collect 60% of her
earnings on media platforms, such as 'OnlyFans' ('OF'), where
Defendant would post content that she created." Id. at ¶ 16. Jones
and Bluresca entered a 24-month Marketing Agreement[1] on or around
September 13, 2022. Id. at ¶ 17.

At a high level, the Marketing Agreement provided that
Bluresca would issue Jones accounts on various social media
platforms, such as Instagram and OnlyFans, some of which require a
subscription for followers to view Jones's posts, which generated
financial income for Jones. Am. Comp. Ex. A at ¶ 2.3. While Jones
would create the content for those accounts, the Marketing
Agreement provided that Bluresca would retain ownership over and

---

[1] The parties alternate between referring to the marketing
agreement as an "agreement," a "contract," and a "marketing
agreement." For consistency, the Court will refer to it as a
"Marketing Agreement."

2

be the exclusive profile manager of those accounts. Id. at ¶¶ 2.3, 2.4. Bluresca agreed to grow Jones's social media accounts by increasing the number "followers" she had; specifically, Bluresca agreed it would pay to "give a shout out" to Jones on popular websites to drive followers to her accounts. Id. at ¶ 2.3. The Marketing Agreement also included a clause limiting Bluresca's liability for any indirect, incidental, special, exemplary, consequential, punitive, or other indirect damages. Ex. A. at ¶ 12.1.

The Amended Complaint alleges that Bluresca initially devoted financial resources to promoting Jones's accounts, but that over time, that financial investment "drastically decreased, making it clear that Bluresca's initial marketing efforts were merely for show." Am. Comp. at ¶¶ 18-19. Upon noticing that Bluresca's financial investment was "almost non-existent," Jones asked questions about the resources Bluresca was devoting to promote her accounts, which went unanswered. Id. at ¶ ¶ 20-22. However, after realizing Jones would "not be cowed into silence," a Bluresca manger admitted that Bluresca could not show it had spent any financial resources on Jones specifically and instead claimed that "We don't have expenditure tracked on a per model basis, unfortunately, because we buy ads in bulk…" Id. at ¶ 24. (internal quotations omitted).

3

Despite Bluresca's lack of financial investment, Jones was still able to grow the number of subscribers to her accounts from 100 to approximately 33,000 through "her exceptional work ethic." Id. at ¶ 25. The Amended Complaint alleges that number would have been "markedly higher" had Bluresca consistently invested in promoting Jones. Id. Jones alleges that in just one year, Bluresca collected nearly $600,000.00 "in fees" from Jones. Id. at ¶ ¶ 26, 28.

Because Jones provided mature content for some of the subscription sites, including OnlyFans, those sites required her to be over the age of eighteen to post. Id. at ¶ 29. Before entering the Marketing Agreement, Jones affirmed to Bluresca that she was older than eighteen and provided her driver's license as proof that she was twenty years old. Id. at ¶ 30.

On or about September 19, 2023, Jones attempted to access her OnlyFans account and discovered that it was blocked and banned; though she immediately appealed that ban, her appeal was denied. Id. at ¶ ¶ 31-32. Jones then contacted Bluresca to determine if anyone working for Bluresca knew why her account had been banned. Id. at ¶ 33. She communicated with an individual named Almonte, who informed her that the account was likely banned as a result of content that suggested she was underage and that such posts generally result in an immediate ban of the account. Id. at ¶ 36. Almonte later contacted an OnlyFans executive by text message,

4

who confirmed that the ban of Jones's account was in place due to an "underage violation." Id. at ¶ 37. Jones alleges those communications prove Almonte knew exactly which post on her OnlyFans account (the "underage post") caused the ban but deliberately provided Jones with false and misleading information when she asked for specifics about the underage post. Id. at ¶¶ 38-41. Jones further alleges that the underage post was shared in May 2023, when Bluresca was "solely responsible" for the content on Jones's account. Id. at ¶¶ 42-43.

Jones then communicated over text message with an individual named Lenny, who "admitted" that Bluresca was to blame for the post in response to messages she sent them. Id. at ¶ 44. The text message conversation between Jones and Lenny reads as follows:

> Jones: Okay, you guys need to call Onlyfans again and tell them that y'all sent the underage message, because it's unfair to me that [I] get blacklisted and can't create an account on Onlyfans, when I am of age and have done nothing to violate the terms.
>
> Lenny: We told them at already, im [sic] not sure if it's going to be permanent, in the second account, were you able to take a screenshot or do you have anything saying when that was sent? We need to give them as much information as possible[.]

Id. at ¶ 45 (alterations in the original). Eventually, Jones's account was permanently banned from OnlyFans subscription sites. Id. at ¶ 48.

Jones alleges that Bluresca negligently or knowingly misrepresented that she was under the age of eighteen to OnlyFans,

5

which tarnished her professional image and caused "her to suffer
drastic financial losses that will only get worse over time." Id.
at ¶ 49.  Jones now claims breach of contract, defamation, and
negligence against Bluresca, which moved to dismiss the Amended
Complaint for failure to state a claim upon which relief can be
granted under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No.
9).

### Legal Standards

    To survive a motion to dismiss for failure to state a claim,
a complaint must contain sufficient factual matter to "'state a
claim to relief that is plausible on its face.'" Ashcroft v.
Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.
Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible "when the
plaintiff pleads factual content that allows the court to draw the
reasonable inference that the defendant is liable for the
misconduct alleged." Id. That requires "more than labels and
conclusions, and a formulaic recitation of the elements of a cause
of action." Twombly, 550 U.S. at 555 (internal citations omitted).
When evaluating a motion to dismiss, the Court construes the
complaint liberally, drawing all reasonable inferences in the
plaintiff's favor and accepting as true all factual allegations,
except for any legal conclusions couched as factual allegations.
E.g., Biro v. Conde Nast, 807 F.3d 541, 544 (2d Cir. 2015).

The complaint, for purpose of evaluating a motion to dismiss, includes written exhibits attached to it and "any statements or documents incorporated in it by reference." Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002). The Court will therefore consider the Marketing Agreement, which was attached to the Amended Complaint, in its analysis of the Motion to Dismiss.

## Discussion

### I.  Breach of Contract

Jones alleges that two of Bluresca's actions underlie her breach of contract. First, Jones argues that Bluresca breached the Marketing Agreement by failing to continually spend money to promote her account. Second, Jones argues that Bluresca breached the Marketing Agreement by posting information suggesting that she was underage, resulting in the ban of her OnlyFans account. She argues that those two actions additionally breached the implied covenant of good faith and fair dealing.

### A. Bluresca's Failure to Invest Financial Resources

At the outset, Jones's first theory of Bluresca's fault, which stems for Bluresca's lack of financial investment in Jones, cannot be pled under the implied covenant of good faith and fair dealing because the gravamen of her complaint involves conduct expressly addressed by section 2.3 of the Marketing Agreement. That section states, in relevant part, "Company's services include

7

providing OnlyFans Page, Instagram Page growth, along with
implementation of their Subscription Sites Strategy ("Services").
In order to grow Client's following, Company will page pages with
a large amount of followers to give a shout out to the Client."
Am. Comp. Ex. A at ¶ 2.3.

When a plaintiff pleads a violation of the implied covenant
of good faith and fair dealing based on conduct addressed by an
express term in the contract, the claim is analyzed as a
traditional breach of contract claim. See Sobel v. Major Energy
Servs., LLC, 2024 WL 552873, at *9 (S.D.N.Y. Jan. 3, 2024) ("But
[a] claim for breach of the implied covenant will ... be dismissed
as redundant where the conduct allegedly violating the implied
covenant is also the predicate for the breach of an express
provision of the underlying contract.") (alteration in the
original) (internal citations omitted); Wurtsbaugh v. Banc of Am.
Sec. LLC, 2006 WL 1683416, at *6 (S.D.N.Y. June 20, 2006).
Therefore, the Court will analyze Jones's claim relating to
Bluresca's failure to invest sufficient financial resources under
the familiar breach of contract principles.

To bring a breach of contract claim under New York law, Jones
must allege "(1) the existence of a contract; (2) due performance
of the contract by the plaintiff; (3) breach of the contract by

8

the defendant, and (4) damages resulting from the breach."[2] Vibes
Int'l Inc., SAL v. Iconix Brand Grp., Inc., 2020 WL 3051768, at *4
(S.D.N.Y. June 8, 2020); see Fischer & Mandell, LLP v. Citibank,
N.A., 632 F.3d 793, 799 (2d Cir. 2011).

The Marketing Agreement states, "In order to grow Client's
following, Company will pay pages with a large amount of followers
to give a shout out to the Client." Ex. A to Am. Comp. at ¶ 2.3.
It further states,

> Except as otherwise provided in this Agreement, the
> Company will have full control over working time,
> methods, and decision making in relation to provisions
> of the Services in accordance with the Agreement. The
> Company will work autonomously and not at the direction
> of the Client. Except as expressly provided in this
> Agreement, Client will not have the right to direct,
> control, or supervise the Company, including (1) the
> manner in which the Company performs or accomplishes its
> duties under this Agreement; (2) the details of how
> Company's services are to be accomplished; (3) the order
> of sequence in which tasks should be performed; (4)
> Rights to display the media from events executed by
> Company.

Id. at ¶ 8.1.

Under those contract provisions, Jones fails to state a claim
for breach of contract. Bluresca was required to give Jones "a

---

[2] Because ¶ 12.1 of the Marketing Agreement prohibits liability
for any "indirect, incidental, special, exemplary, consequential,
punitive, or other indirect damages of any nature," Jones is
limited to her request for direct damages, which she claims in the
amount of five million dollars. Jones argues that the liability
clause is unconscionable. However, the Court need not, and
therefore will not, resolve that issue to decide the Motion to
Dismiss.

shout out" on certain pages, and the Amended Complaint alleges that Bluresca did so. Am. Comp. at ¶ 19. That Bluresca did not do so to Jones's satisfaction does not amount to a breach of contract claim; to the contrary, the Marketing Agreement expressly allows Bluresca to use its discretion in completing its duties and prohibits Jones from directing Bluresca on how to best grow her account. That Jones disagrees with how Bluresca exercised its rights under the Marketing Agreement does not amount to a breach of contract claim.[3]

## B. The Underage Post

Jones's claim that the underage post violates the implied covenant of good faith and fair dealing fares better. "'Under New York law, the implied covenant of good faith and fair dealing inheres in every contract.'" Childers v. New York & Presbyterian Hosp., 36 F. Supp. 3d 292, 312 (S.D.N.Y. 2014) (quoting Travellers Int'l, A.G. v. Trans World Airlines, Inc., 41 F.3d 1570, 1575 (2d Cir.1994)). "This covenant embraces a pledge that neither party

---

[3] To the extent that Jones argues Bluresca violated the implied covenant of good faith and fair dealing while exercising its discretion under the Marketing Agreement, courts in this circuit have consistently refused to impose liability on a party that acts in its own self-interest while exercising discretion given to it under a contract. See, e.g., Woodard v. Reliance Worldwide Corp., 819 F. App'x 48, 49 (2d Cir. 2020) ("the implied covenant 'does not extend so far as to undermine a party's general right to act on its own interests in a way that may incidentally lessen the other party's anticipated fruits from the contract.'") (citing M/A-COM Sec. Corp. v. Galesi, 904 F.2d 134, 136 (2d Cir. 1990)).

shall do anything which will have the effect of destroying or
injuring the right of the other party to receive the fruits of the
contract." Gillespie v. St. Regis Residence Club, 343 F. Supp. 3d
332, 341 (S.D.N.Y. 2018) (internal citations and quotations
omitted). "The implied covenant 'can only impose an obligation
consistent with other mutually agreed upon terms in the contract.
It does not add [ ] to the contract a substantive provision not
included by the parties." Broder v. Cablevision Sys. Corp., 418
F.3d 187, 198-99 (2d Cir. 2005) (internal citations omitted)
(alteration in the original). However, the implied covenant does
encompass "any promises which a reasonable person in the position
of the promisee would be justified in understanding were
included." 511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98
N.Y.2d 144, 153 (2002) (internal citations and quotations
omitted).

    Bluresca argues that it would have defied common sense for
the company to post a false claim that Jones was underage,
resulting in a ban of her account, because Bluresca would lose
profits from that ban. Memorandum in Support of the Motion to
Dismiss ("MTD") (Dkt. No. 10) at 10. In response, Jones argues
that "it is common knowledge that many individuals have a prurient
interest in underage performers. It hardly defies common sense
that someone within Bluresca would try to capture that group's
attention by posting that Ms. Jones was under 18 years' old."

Opposition to MTD (Dkt. No. 20) at 6. Bluresca does not reply
substantively to this argument, arguing only that the theory is a
new fact, which cannot be alleged for the first time in an
opposition brief. Reply to Opp. (Dkt. No. 22) at 6. While it is
true that new facts cannot be alleged for the first time in
Jones's opposition, even without considering that potential
motivation for the underage post, the Amended Complaint maintains
a claim for the breach of implied covenant of good faith and fair
dealing.

The Amended Complaint alleges that Bluresca had control of
Jones's account at the time the underage post was shared. Am.
Comp. at ¶ 43. Making all inferences in Jones's favor, Bluresca
posted the content that suggested that Jones was underage, which
Bluresca knew could lead to a permanent ban of her account. That
ban deprived Jones of the benefit of the Marketing Agreement,
namely profits that were earned from the subscriptions to that
account. Jones was justified in believing that, as part of the
Marketing Agreement, Bluresca would agree to not take any action
to harm or destroy access to her accounts.

Bluresca next argues that her breach of contract claim under
the implied covenant of good faith and fair dealing must still
fail because damages were not adequately alleged in the Amended
Complaint. However, Jones has set forth her theory of damages: if
not for the post showing she was underage, she would have

12

continued to gain income from the subscribers to her OnlyFans account. See, e.g., Am. Comp at ¶ 49. While Bluresca claims that theory is based on "hypotheticals that have no basis in reality," at this stage in the litigation, the Court is required to accept Jones's allegations as true; Bluresca will have the opportunity to challenge the veracity of the alleged facts at a later stage of the litigation.

The Motion to Dismiss the Amended Complaint for breach of contract based on the failure to invest financial resources in Jones's account is granted. The Motion to Dismiss the Amended Complaint for breach of contract based on the breach of the implied covenant of good faith and fair dealing stemming from the underage post is denied.

## II. Defamation

Jones also alleges that Bluresca defamed her by posting content that suggested she was underage. To state a claim for defamation under New York law, Jones must show (1) a false statement, (2) published without privilege or authorization to a third party, (3) constituting fault as judged by, at a minimum, a negligence standard, that (4) causes special harm or constitutes defamation per se. E.g., Dillon v. City of New York, 261 A.D.2d 34, 38 (1999); see also Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC, 864 F.3d 236, 245 (2d Cir. 2017). Jones is not required to plead special harm in this

13

case because she alleged that the defamatory post impacted her professional livelihood, which constitutes defamation per se. See Unlimited Cellular, Inc. v. Red Points Sols. SL, 677 F. Supp. 3d 186, 198 (S.D.N.Y. 2023) ("'A statement that tends to injure another in his or her trade, business or profession is defamatory per se.'") (quoting Biro v. Conde Nast, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012)).

At the outset, Bluresca argues that the third element, fault, must be higher than negligence because Jones is a limited public figure because she actively posts on social media as a means to earn income. A limited public figure is one who "voluntarily injects himself or is drawn into a particular public controversy and thereby becomes a public figure for a limited range of issues." BYD Co. Ltd. v. VICE Media LLC, 531 F. Supp. 3d 810, 819 (S.D.N.Y. 2021), aff'd, No. 21-1097, 2022 WL 598973 (2d Cir. Mar. 1, 2022). To find a plaintiff as a limited public figure in the Second Circuit,

> a defendant must show the plaintiff has: (1) successfully invited public attention to his views in an effort to influence others prior to the incident that is the subject of litigation; (2) voluntarily injected himself into a public controversy related to the subject of the litigation; (3) assumed a position of prominence in the public controversy; and (4) maintained regular and continuing access to the media.

Lerman v. Flynt Distrib. Co., 745 F.2d 123, 136-37 (2d Cir. 1984).

14

Under that test, Jones is not a limited public figure. While she has invited public attention to her social media accounts by actively posting content on them and engaging Bluresca to promote them, she does not maintain regular and continuing access to the media, and her platform is not such that she has assumed a position of prominence in a controversy relating to underage posting. There is no indication in the Amended Complaint that she has such access to the public through the media such that she could counter the false information about her age. Therefore, she must only allege that Bluresca acted with negligence to meet the fault requirement for defamation. See Unlimited Cellular, 677 F. Supp. 3d at 196.

Bluresca argues that Jones's claim must still fail because she does not identify the allegedly defamatory post in her Amended Complaint. To succeed on a claim for defamation, a "plaintiff must plead the defamatory statements with some particularity." Id. (citing N.Y. C.P.L.R. 3016(a)). That requires Jones "to 'identify the allegedly defamatory statements, the person who made the statements, the time when the statements were made, and the third parties to whom the statements were published.'" Id. at 196-97 (quoting Neal v. Asta Funding, Inc., 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014) (collecting cases)). "Mere conclusory statements that the claimant was disparaged by false statements are insufficient to state a defamation claim." Neal, 2014 WL

3887760, at *3 (finding that plaintiff's failure to identify the speaker of the alleged defamatory statement was "fatal to his claim.").

Because Jones has not identified the allegedly defamatory statement in the Amended Complaint, the person who made the statement, nor the time when the statement was made, she has not successfully stated a claim for defamation. Taking all inferences in favor of Jones, the Court can infer that someone from Bluresca shared the underage post. However, the Court can make no further inference as to who actually posted the content at issue, which is fatal to the claim. Id. at *3 (dismissing a claim for defamation where it was alleged that an "anonymous employee" made a defamatory statement). Nor can the Court make any inference about the content of the post, which prevents the Court from evaluating whether the statement itself is defamatory. Id.; see also Dillon, 261 A.D.2d at 38 ("In evaluating whether a cause of action for defamation is successfully pleaded, the words must be construed in the context of the entire statement or publication as a whole, tested against the understanding of the average reader, and if not reasonably susceptible of a defamatory meaning, they are not actionable and cannot be made so by a strained or artificial construction."); Biro, 883 F. Supp. 2d at 456–57 ("Whether particular words are defamatory presents a legal question to be

16

resolved by the court[s] in the first instance.") (alteration in the original) (internal quotations omitted).

The claim for defamation is therefore dismissed with leave to amend.

### III. Negligence

Bluresca moves to dismiss the negligence claim on the ground that it is duplicative of the breach of contract and defamation claim.

To sustain a claim for both negligence and breach of contract, the negligence claim must assert a duty that arises separate from the existence of the contract. That is, a party cannot sustain a tort claim if it "does no more than assert violations of a duty which is identical to and indivisible from the contract obligations which have allegedly been breached." Purchase Partners, LLC v. Carver Fed. Sav. Bank, 914 F. Supp. 2d 480, 497 (S.D.N.Y. 2012), on reconsideration in part, 2013 WL 1499417 (S.D.N.Y. Apr. 10, 2013). If a plaintiff fails to distinguish between duties giving rise to the breach of contract claim and the negligence claim, the negligence claim must be dismissed as duplicative. Id. at 498-99 (citing Clarendon Nat'l Ins. Co. v. Health Plan Adm'rs, 2009 WL 3053736, at *3 (S.D.N.Y. Sept. 24, 2009)).

Here, Jones has not alleged that Bluresca's duty to her arose from anything other than the Marketing Agreement, and the facts

17

and damages underlying her negligence claim are the same as those underlying her breach of contract claims. Therefore, the negligence claim is dismissed as duplicative.

### Conclusion

The Motion to Dismiss is granted as to Jones's claims for defamation, negligence, and breach of contract based on Bluresca's failure to invest the appropriate level of financial resources in Jones's accounts. The Motion to Dismiss is denied as to Jones's claim for breach of contract based on the underage post.

So ordered.

Dated:   New York, New York
         June 21, 2024

                                     Louis L. Stanton
                            _____
                              LOUIS L. STANTON
                              U.S.D.J.