IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AALIYAH JONES,<br><br>       Plaintiff,<br>vs.<br><br>BLURESCA, LLC,<br><br>       Defendant. | Case No. 1:23-cv-10758<br><br>**ESI PLAN AND ORDER** |

The parties in this action ("Plaintiff" and "Defendant", together the "parties"), by and through their undersigned counsel, stipulate and agree that the following ESI Plan and [Proposed] Order shall govern the preservation, collection and production of electronically stored information ("ESI") and documents in this action. The parties and the Court recognize that the ESI Plan and Proposed Order is based on facts and circumstances as they are currently known to each party, and that additions and modifications may become necessary. The parties will use good faith, reasonable, and proportional efforts to preserve, identify, and produce relevant information.

### I. Description of Claims/Counterclaims/Crossclaims

Plaintiff claims that Defendant breached its employment contract with her when Defendant provided false and misleading information about Plaintiff to various third parties including OnlyFans and made defamatory statements about Plaintiff leading to the closing of her OnlyFans account and causing her to suffer economic and emotional damages. Plaintiff refers to her Opposition to Defendant's Motion to Dismiss for a full recitation of Plaintiff's position.

Defendant maintains that Plaintiff's claims in the Amended Complaint for breach of contract, defamation, or negligence are meritless and respectfully refers the Court to the Defendant's pending Motion to Dismiss, dated February 13, 2024, for a full recitation of Defendant's position.

By signing below, counsel for the parties confirm that they have factored in the potential damages and relief sought in this case, as well as the resources of the parties, to develop an ESI Protocol that is proportional to the needs of this case.

## II. Meet and Confer

Pursuant to Fed. R. Civ. P. 26(f), counsel are required to meet and confer regarding certain matters relating to electronic discovery before the Initial Pretrial Conference (the Rule 16 Conference). Counsel hereby certify that they have met and conferred on April 23, 2024 to discuss these issues.

## III. Preservation

The parties have discussed the obligation to preserve potentially relevant ESI and agree to the following scope and methods for preservation, including but not limited to:

1. The parties agree to preserve all relevant data, including metadata, from the day the parties were notified of the litigation, on or about October 11, 2023, through the present.
2. The parties agree to preserve all existing accounts, documents and communications relevant to the dispute.
3. Plaintiff agrees and certifies that Aaliyah Jones, a/k/a Sofia Reyna, a/k/a Lia Jones ("Jones") is responsible for Plaintiff's data preservation.
4. Defendant agrees and certifies that the following individuals are responsible for Defendant's data preservation: Nicholas Almonte, Torun Ugur, and Alejandro "Lenny" Mendoza.

## IV. Collection

1. **Plaintiff's Information Systems.** Plaintiff anticipates that collection will occur from the following sources of ESI:

   a. Email;

   b. Social media accounts; and

   c. Instant messages and text messages;

2. **Defendant's Information Systems.** Defendant anticipates discovery will occur from the following sources of ESI:

   a. Email;

   b. Bluresca electronic databases; and

   c. Instant messages and text messages.

3. **Custodians.** The parties have agreed that data will be collected from the following custodians for review:

   a. Plaintiff will collect data from Aaliyah Jones.

   b. Defendant will collect data from Nicholas Almonte, Torun Ugur, and Alejandro "Lenny" Mendoza.

   c. The parties may request that additional custodians be added for good cause (with both parties reserving the right to object to the addition of custodians). If the parties cannot reach agreement regarding additional custodians after a meet and confer, they may present the issue to the Court for resolution.

V. **Search and Review**

The parties have discussed methodologies or protocols for the search and review of ESI, as well as the disclosure of techniques to be used. To the extent the parties have reached agreement as to search and review methods, provide details below:

1. **Keyword Search Terms.** The parties will, at a mutually agreeable time, exchange a preliminary list of proposed keyword search terms to employ in connection with the

3

parties' review and production of documents in this matter, as well as any advanced culling techniques the parties propose to employ. Within three business days of such exchange, the parties shall meet and confer in an attempt to agree on keyword search terms as well as other advanced culling techniques. If the parties are unable to do so, they may present any issues for resolution by the Court.

  a. The parties agree to discuss hit rate and/or responsiveness rates after running initial keyword search terms. After the review commences, the parties may propose modifications to the search terms with good cause. The volume of documents relating to a particular search term (based on sampling, hit terms, or other review) shall be considered in determining whether there is good cause for modification, as shall the importance of the term and the existence of viable alternatives, narrowing search criteria, and/or advanced culling techniques. The parties will attempt to resolve any disputes regarding proposed modifications through a meet and confer process. If the parties are unable to do so, they may present the issue to the Court for resolution.

2. The parties agree to review documents from August 1, 2022 through the present.
3. Nothing in the Order shall be construed to waive the Parties' right to object to the scope of particular discovery requests or to review their own documents for responsiveness or privilege. Nor shall anything in this Order relieve the Parties of their obligation to produce readily identifiable responsive, non-privileged documents not captured by the agreed-upon search terms.

## VI. Production

1. The parties have discussed factors relating to the scope of production, including but not

limited to: (a) number of custodians;(b) date ranges for which potentially relevant data will be drawn; (c) timing of productions (including phased discovery or rolling productions); (d) prioritization of review; and (e) ESI in the custody or control of non-parties:

   a. Plaintiff will produce documents from one custodian: Aaliyah Jones. Defendant will produce documents from three custodians: Nicholas Almonte, Torun Ugur, and Alejandro "Lenny" Mendoza.

   b. The parties agree to produce documents from August 1, 2022 until the present.

   c. The parties agree to complete substantial production of the documents by **August 16, 2024**, but agree to rolling productions as applicable.

   d. The parties agree there is no prioritization in the review.

   e. The parties agree it is the issuing party's responsibility seeking the information in the possession, custody or control of non-parties to ensure that all parties receive any non-party productions.

2. **Metadata.** The parties agree to produce ESI, including email and non-email information, in a single-page black and white TIFF format (300 DPI resolution, Group IV Compression) along with corresponding document-level extracted text format with the following metadata fields in standard Relativity load files, including Opticon/Relativity Image load files, except that Excel spreadsheets (.xls and .xlsx), comma delimited text files (.csv), media files (e.g. video and audio files) and presentation files, such as PowerPoint files (.ppt and .pptx), shall be produced in native format. A placeholder TIFF shall be provided for all files produced in native format. The placeholder should be bates stamped with the production number of the native file. The parties further agree to meet and confer concerning the production of specific files in native format as discovery progresses and

should a reasonable need arise. The load files should contain the following fields (to the extent data is able to be automatically extracted from the file and/or is available without manual input):

    a. Custodian (name of custodian where document originated);

    b. Author (author of file from properties);

    c. CC

    d. BCC

    e. Recipient (To field) Doc Title (title of file from properties);

    f. Subject (subject line of the email)

    g. Created Date (date the file was created);

    h. Created Time (time the file was created);

    i. Last Modified Date (date the file was last modified);

    j. Last Modified Time (time the file was last modified);

    k. Date Sent (date the email was sent)

    l. Time Sent (time the email was sent)

    m. Date Received (date the email was received)

    n. Time Received (time the email was received)

    o. File Name (original name of the file);

    p. File Ext (extension for the file);

    q. MD5 Hash (or equivalent);

    r. Bates Begin (beginning production number);

    s. Bates End (ending production number);

    t. A field populated with the Bates number of the first page of the family group of documents (BEGBATESATT);

    u. A filed populated with the Bates number of the last page of the family group of documents (ENDBATESATT);

    v. Native link (path to the native file as included in the production (e.g., d:\PROD001\natives\ABC00015.xls) for all files produced in native format;

    w. Confidential Properties (populated with the confidentiality status);

    x. Redaction Properties (populated with the redaction status). For documents that are produced with redactions, each redaction will contain a black or white box with the word "Redacted" such that OCR text of the document will enable searching for the "redacted" and locating the precise places where the redaction was done. All files that are redacted will be provided in TIFF format only and the only text provided is that which is OCRed.

    y. The Full Path (full path location to where the file originally resided) need not be included in the load file, but should be preserved, if available, for potential provision upon reasonable request.

3. The parties agree that emails should be produced along with all responsive attachments in sequential order as part of a family, maintaining the parent-child relationship, to the extent the message or any attachment is not privileged. Any emails or attachments to the emails withheld on privilege grounds will be shown on a privilege log, with control numbers assigned by the producing party. Privilege logs are to conform to the requirements set forth in Section VI (17) below.

4. All compressed or zipped ESI shall be unzipped or decompressed during processing. To the extent an electronic file contains embedded files, such files shall be produced as attachments in sequential order as part of a family, maintaining the parent-child relationship. A placeholder may be inserted for files deemed not relevant that are part of a family being produced.

5. All images must be assigned a unique Bates number that is sequential within a given document and across the production sets. Each page of a produced document shall have a legible, unique page identifier ("Bates Number") electronically "burned" (stamped) onto the image at a location that does not obliterate, conceal, or interfere with any information from the source document. No other legend or stamp will be placed on the document image other than a confidentiality legend or redactions (where applicable). The confidential legend shall be "burned" (stamped) into the documents image at a location that does not obliterate or obscure any information from the source document.

6. Each image shall be named with the Beginning Bates Number of the document, followed by the extension ".TIF." Any native documents shall be named with the Beginning Bates number of the document.

7. A document level text file will be provided containing the extracted text (or OCR for documents where no extracted text exists). The file will be named after the Beginning Bates number of each document. Where a document contains redactions, only OCR text will be provided.

8. A placeholder may be inserted for exception documents (i.e., failed documents that could not be processed due to corruption or password protection) that are part of a family being produced.

9. Where color is material to the interpretation of ESI and upon reasonable request, the receiving party may request the ESI be produced in color.

10. The parties shall, upon reasonable request, make native format copies of any produced, unredacted document not otherwise required to be produced in native format under this Protocol available for inspection and copying. The party requesting the inspection and copying shall bear the cost of any such request.

11. **Prior Productions.** For any productions made prior to the entry of this Order, the producing party shall supply, in a reasonably prompt manner, load files that comply with the provisions of this Order.

12. **Security.** The parties will make reasonable efforts to ensure that any productions made are free from viruses and are provided on encrypted media or via a secure file transfer site.

13. **Confidentiality Designations.** Responsive documents in TIFF format will be stamped with the appropriate confidentiality designations in accordance with the Protective Order in this matter. To the extent responsive documents are produced in native format, confidentiality designations will be identified in the file name.

14. **Production Media.** Documents shall be produced in readily accessible external hard drives, DVDs, CDs, or via secure file transfer site ("Production Media"). When reasonably feasible, each piece of Production Media shall be labeled with (i) the producing party's name; (ii) the production date; (iii) the Bates range of the materials contained the Production Media; and (iv) the Confidentiality status of the documents contained on the Production Media.

15. **Unitizing of Documents.** Distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., documents should be unitized as kept in the ordinary course of business).

16. **De-Duplication.** The parties have discussed and agreed to de-duplication and email threading as forms of methods to expedite review. Parties shall make reasonable efforts to de-duplicate ESI. All ESI will be de-duped using accepted industry standard measures. The parties shall only produce one document image for duplicate ESI documents within a duplicate group, with an "AllCustodians" Metadata field identifying all custodians who possessed copies of the document.

17. **Privilege Logs.** The parties have agreed to exchange categorical privilege logs with the following specifications:

    a. Privilege logs shall be provided within 30 days of substantial completion of the document production, or **September 16, 2024**.

    b. The parties need not identify, on any privilege or work product log in response to document requests, privileged documents constituting communications between any party and outside litigation counsel for that party that were for the purposes of litigating the above-captioned case, or were in anticipation of litigation regarding the allegations made in the above-captioned case.

    c. Neither party will treat the failure to log such documents as a waiver of any privilege or protection.

    d. If any party disagrees that a privilege log provides sufficient information to evaluate or challenge the claim of privilege or protection, that party may request further

information, and the party claiming the privilege protection must provide the information required by Rule 26(b)(5) or other applicable law.

e. In advertent disclosure of information or documents subject to a claim of privilege or work product protection shall be governed by Fed R. Civ. Proc. 26(b)(5) and F.R.E. 502(e), subject to subsections (f) and (g) below.

f. The production or disclosure of any information (including documents) in this action that a party or third-party ("Producing Party") later claims should not have been produced due to a privilege or protection from discovery – including, but not limited to, any attorney client privilege, work product privilege, joint defense privilege, or settlement privilege – shall not constitute a waiver of, or estoppel as to, any such privilege or protection, regardless of whether reasonable steps were taken to prevent inadvertent disclosure. A Producing Party may request the return or destruction of such information, which request shall identify the information and the basis for requesting its return. If a party receives information that it believes is subject to a claim or privilege or protection from discovery ("Recipient Party"), the Recipient Party shall promptly identify the information to the Producing Party.

g. When a Producing Party or Recipient Party identifies such privileged or protected information, the Recipient Party: (1) shall not use, and shall immediately cease any prior use of, such information; (2) shall take reasonable steps to retrieve the information from others to which the Party disclosed the information; (3) shall, within five business days of the Producing Party's request, return to the Producing Party or destroy the information and destroy all copies thereof; and (4) shall confirm to the Producing Party the destruction, under (3) above, of all copies of the

information not returned to the Producing Party. No one shall use the fact or circumstances of production of the information in this action to argue that any privilege or protection has been waived. Within 14 days after a Producing Party or Recipient Party identifies the information, and not thereafter, the Recipient Party may file a motion to compel the production of the information on the basis that: (a) the information was never privileged or protected from disclosure; or (b) any applicable privilege or immunity has been waived by some act other than the production of the information in this action. The Producing Party and the Recipient Party shall meet and confer in accordance with applicable law or Court rules regarding any such motion to compel. Notwithstanding this provision, no party shall be required to return or destroy any information that may exist on any disaster recovery backup system.

   h. The parties have not discussed a 502(d) order.

18. **Third Party Subpoenas.** A party that issues a subpoena requesting the production of documents ("Issuing Party") to any third party shall include a copy of the Protective Order in this case with the subpoena. The Issuing Party shall also state that the parties have requested that third parties produce documents in accordance with the specifications set forth in the Protective Order.

   a. The Issuing Party shall ensure that any documents it obtains pursuant to a subpoena are produced to all parties.

   b. If a third-party production is not Bates-stamped, the Issuing Party will endorse the third-party production with unique prefixes and Bates numbers prior to producing

them to the other Party. The Issuing Party bears no responsibility for further conforming any third-party production to the requirements of this Protocol.

c. Nothing in this Order is intended or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the parties or third parties to object to a subpoena.

The preceding constitutes the agreement reached between the parties to certain matters concerning electronic discovery as of this date. Counsel certify that in connection with preparation of this ESI Plan and [Proposed] Order they are sufficiently knowledgeable in matters relating to their clients' technological systems to discuss competently issues relating to electronic discovery, or have involved someone competent to address these issues on their behalf. Nothing in this Order shall prohibit a party from seeking modification of any of its terms either by stipulation or application to the Court.

[*Signatures on the following page*]

| | |
|---|---|
| **JOSEPH & NORINSBERG LLC** | **ALSTON & BIRD, LLP** |
| By: */s/ Jon L. Norinsberg*<br>Jon L. Norinsberg<br>Crystal Dozier<br>110 E. 59th St.<br>Suite 2300<br>New York, NY 10022<br>Jon@norinsberglaw.com<br>Crystal@employeejustice.com | By: */s/ Steven L. Penaro*<br>Steven L. Penaro<br>Kristen C. Kuan<br>90 Park Avenue<br>New York, NY 10016<br>Steve.Penaro@alston.com<br>Kristen.Kuan@alston.com |
| *Attorneys for Plaintiff Aaliyah Jones* | *Attorneys for Defendants Bluresca, LLC* |

Dated: June 24, 2024        SO ORDERED: _____
                            Jennifer E. Willis
                            United States Magistrate Judge